UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| STEVE ELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEGACY, INC.,<br><br>Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

This class action is respectfully brought by Plaintiff Steve Elson ("Plaintiff" and/or "Elson"), on behalf of himself and all others similarly situated who purchased coins from Defendant Legacy, Inc. ("Legacy" and/or "Defendant").

1. Legacy has a track record of engaging in fraudulent and unconscionable business practices that take advantage of unwary, and often elderly persons, including Plaintiff and the Class members, who have lost millions of dollars in the process.

2. Legacy's conduct constitutes a violation of Minn. Stat. §§ 325F.67 and 325F.69, subd. 1, and these violations give rise to a private cause of action for damages and equitable relief under Minn. Stat. § 8.31, subd. 3a, which provides that "[i]n addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minnesota Statutes §§

325F.67 and 325F.69 are among the laws referenced explicitly in Minn. Stat. § 8.31, subd. 1, which generally covers all state laws "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade . . .."

3. Because Plaintiff and other Class members are over the age of 62, an additional cause of action exists under Minn. Stat. § 325F.71, which applies to deceptive acts perpetrated against senior citizens (62 years old or older) and vulnerable adults. Under Minn. Stat. § 325F.71, subd. 4, as under Minn. Stat. § 8.31, subd. 3a, a person "injured by a violation of this section may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 325F.71, subd. 2 imposes an additional civil penalty of $10,000 per violation.

4. The putative class is a nationwide Class with an Elder Subclass seeking damages, treble damages, restitution, disgorgement, civil penalties, attorney's fees, and costs of suit. As set forth below, the Class, including the Elder Subclass, should be certified and the relief requested ordered as soon as possible.

## I. PARTIES

5. Plaintiff Steve Elson is an individual Illinois citizen residing in Paxton, Illinois.

6. Defendant Legacy, Inc. is a Minnesota corporation with its principal place of business located at 3383 Labore Road, Vadnais Heights, Minnesota 55110.

## II. JURSDICTION & VENUE

7. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because some members of the proposed nationwide Class are citizens from States different from Defendant's principal place of business, and the aggregate amount in controversy exceeds $5,000,000.

8. This Court also has original subject matter jurisdiction over federal claims under 28 U.S.C. § 1332 and supplemental jurisdiction over all state-law claims under 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendant because Defendant is incorporated in Minnesota, headquartered in Vadnais Heights, Minnesota, and is at home in the state. Furthermore, Defendant has transacted business in this state, has purposefully availed itself of the state's laws and jurisdiction by soliciting customers in the state and delivering merchandise within the state, and has committed tortious acts within the state.

10. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant transacted its affairs with Plaintiff in this District, and a substantial part of the events giving rise to this action and the property that is the subject of the action is situated in this District.

## III. FACTUAL ALLEGATIONS

11. Elson is a 75-year-old elderly man who lives in Illinois. He subsists on a fixed income and is not in a position to otherwise earn money if his savings run out or are absconded with by fraudsters.

12. Since at least 2020, Elson has been solicited by Defendant over telephone and through email correspondence to purchase commemorative coins and sets of commemorative coins.

13. Defendant induced Elson to purchase numerous coins at a combined price totaling over $300,000.00. On two separate occasions, Elson paid $9,999.00 for a single coin.

14. However, subsequent appraisals show that the coins are worth a fraction of what Elson paid.

15. Defendant never told Elson that the *market* value of the coins was substantially less than what he was buying.

16. Rather, Defendant told Elson to hold the coins with the promise of appreciation.

17. Defendant never told Elson that Defendant knew that, based upon his purchase price, he was only purchasing the coins for novelty value, as a "keepsake," or otherwise that at the price the coins were not "investment" assets that were likely to appreciate enough to warrant the price.

18. Defendant never explained to Elson that his purchases would not result in any profit if he decided to sell the coins he thought he was purchasing to ensure financial security.

19. Elson has been substantially injured because he converted available cash into these coins, which are not worth anywhere near the value of the price demanded and extracted by Defendant for them.

4

20. Commemorative coins are typically minted with a quarter or half ounce of a precious metal to commemorate a special event or a notable person.

21. Defendant makes commemorative coins available to anyone who wants to buy them.

22. Typically, the value of commemorative coins does not fluctuate with the value of the underlying precious metal.

23. Commemorative coins have dubious numismatic value in the long run as investment vehicles when priced so high, and the ability to fully recoup one's investment has never been proven.

24. Elson purchased the coins after Defendant made representations regarding the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.

## IV.  CLASS ALLEGATIONS

25. This action is brought, and may be properly maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure. All requisite elements of Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) are satisfied; there is a well-defined community of interests in the litigation; the proposed Class and any subclasses are ascertainable; and a single class action is the superior manner to proceed when compared to the joinder of thousands, or tens of thousands, of individual cases challenging the same practices.

26. Plaintiff brings this action individually on behalf of himself, and on behalf of the Class and Subclass(es) defined below, for which Plaintiff is a member, under Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure seeking damages, restitution,

injunctive and declaratory relief pursuant to the applicable laws set forth in the state law counts below.

27.    This action is brought on behalf of a national class (the "Class"), consisting of:

> All ascertainable persons in the United States who purchased one or more coins from Legacy, or any of its affiliates, successors, predecessors or assigns from 2017 until the present.

28.    This action is also brought on behalf of elderly citizens (the "Elder Subclass"), consisting of:

> All Class members who were also age 62 or over at the time they made the purchase.

29.    The Class Period for the Class and Elder Subclass dates back to the longest applicable statute of limitations for any claims asserted on behalf of that Class or the Elder Subclass from the date this action was commenced and continues through the present and to the date of judgment.

30.    Excluded from the Class are Defendant, its corporate parent, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, assigns of any such excluded persons or entities, and the attorneys for Plaintiff herein. Also excluded from the Class are any judges presiding over these proceedings and their immediate family members.

31.    **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact numbers of Class members are unknown to

Plaintiff at this time, Plaintiff on information and belief believes that the numbers exceed 100.

32. **Common Questions of Law and Fact Predominate**: The questions of law and fact common to the Class predominate over questions affecting only individuals. Among the questions of law and fact common to the Class are:

    a. Whether Defendant employed a scheme or artifice to defraud Plaintiff and the Class;

    b. Whether Defendant's policies allowed them to induce class members to pay well above market value for the coins;

    c. Whether Plaintiff and the Class members were overcharged;

    d. Whether Plaintiff and the Class members were solicited to purchase coins or failed to disclose terms outlawed by the Minnesota Department of Commerce;

    e. Whether Defendant utilized other schemes to injure Plaintiff and the Class in ways heretofore obscured;

    f. Whether Plaintiff and the Class are entitled to recession;

    g. Whether Defendant's sales practices were fraudulent;

    h. Whether Defendant's wrongfully obtained profits should be disgorged and, if so, the proper calculation of the amount to disgorge;

    i. Whether the Class is entitled to restitution and, if so, the proper calculation of such restitution;

j. Whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

k. Whether Defendant violated the Minnesota Prevention of Consumer Fraud Act and the Minnesota Uniform Deceptive Trade Practices Act;

l. Whether Defendant violated the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act;

m. Whether Plaintiff and the Class are entitled to injunctive relief; and

n. Whether Plaintiff and the Class are entitled to damages and, if so, the proper calculation of such damages.

33. **Typicality**: Plaintiff's claims are typical of other Class members' claims because Plaintiff, like every other Class member, was exposed to virtually identical conduct and was overcharged. Further, Plaintiff's claims are typical of those of the Elder Subclass since they were over the age of 62 at the time of the purchases.

34. **Adequacy**: Plaintiff can fairly and adequately represent the Class's interests; Plaintiff has no conflicts of interest with other Class members, and has retained counsel competent and experienced in class action and complex civil litigation.

35. **Ascertainability**: The identities of individual Class members are readily ascertainable through appropriate discovery from records maintained by Defendant and their agents.

36. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is

remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions. No difficulty will be encountered in this case's management to preclude maintenance as a class action.

37. **Manageability:** The Class litigation will be manageable because all issues are identical, and individualized calculation of damages can be accomplished methodically by an expert via the use of data and information provided by Defendant and its agents.

## V. CLAIMS FOR RELIEF

### COUNT 1

**Violation of the Minnesota Prevention of Consumer Fraud Act,
Minn. Stat. §§ 325F.68 *et seq.***

38. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as though fully set forth here.

39. This Count is based on Defendant's deceptive and misleading conduct and common omissions of material fact.

40. Minnesota consumer protection statutes are remedial in nature, and all broadly prohibit deceptive, unfair, and misleading practices directed at consumers in the course of business, including those alleged to have been conducted by Defendant.

41. Plaintiff and the Class are persons within the meaning of Minnesota's Consumer Fraud Act.

42. The items for which Defendant charged Plaintiff are goods, services, and/or merchandise within the meaning of Minnesota's Consumer Protection Statute.

43. Defendant charged Plaintiff directly for the goods, services, and merchandise at issue.

44. Defendant marketed and sold coins to Plaintiff and the Class in a deceptive and misleading manner.

45. As described above, Defendant systematically and regularly engaged in selling coins, overpricing them, obfuscating and concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

46. Defendant violated the Minnesota Consumer Protection Statutes by, among other things, (i) misrepresenting the quality of the coins, including their value and future value; allowing Plaintiff and the Class to operate under an obvious mistaken belief about the value and utility of the coins; (ii) selling the coins to Plaintiff and the Class members in a manner and at a price that relied upon a misapprehension and lack of understanding about the qualities, characteristics, uses, benefits of the coins which the coins lacked; (iii) advertising the sale of certain coins with the intent to sell other coins for more money; making omissions regarding the reasons for price of the coins; and (iv) representing that the consumer stands to receive an economic benefit which is contingent on an external factor (the market) without disclosing the truth about the contingency or its likelihood to occur.

47. Defendant never told Plaintiff or Class members that it engaged in cramming and/or maintained internal incentive programs aimed at increasing its revenues by charging its customers for overpriced coins and convincing an unwitting public that the coins are

valuable and worth what they are charging for them. The omission of such facts was material, as reasonable consumers contemplating transactions with Defendant, either initially or on an ongoing basis, would have wanted to know about such practices prior to engaging in such transactions. Reasonable consumers, had they been made aware of such facts, would have acted differently, including but not limited to—if able—not purchasing the coins.

48. Defendant had a duty to disclose material facts to Plaintiff and members of the Class. The information concealed was in the exclusive possession of Defendant and not able to be obtained by Plaintiff and Class members from other sources. Additionally, Defendant made partial statements about price in the form of sales representations and billing statements. Having spoken and provided partial information, Defendant had an affirmative duty to fully disclose all facts, including the existence of internal incentive programs aimed at overcharging Plaintiff and the Class.

49. Defendant's misrepresentations were directed at and affected a broad group of consumers including Plaintiff and the Class.

50. These practices were not isolated incidents but rather the result of widespread, systematic, pervasive, and persistent conduct and business policies adopted by Defendant, which were aimed at maximizing Defendant's revenue at the expense of its customers.

51. Minnesota's Prevention of Consumer Fraud Act prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

52. Under Minnesota's Prevention of Consumer Fraud Act, an objective test is employed in determining whether a practice is likely to deceive a consumer acting reasonably. That is, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission of material fact at issue. Defendant acted with the intent that Plaintiff and members of the Class rely on its concealment, suppression, or omission, in connection with the sale or advertisement of goods and services, and therefore engaged in unlawful practices in violation of Minnesota's Consumer Protection Statute.

53. Defendant engaged in unfair and deceptive acts and practices that violated each of Minnesota's Consumer Protection Statutes, causing Plaintiff and members of Class injury and financial loss. Additionally, the risk of future injury remains unless enjoined.

54. Under Minn. Stat. § 8.31, subd. 3a, Plaintiff and members of the Class are thus entitled to recover damages, costs and disbursements, including costs of investigation, and reasonable attorney's fees, and receive other relief as determined by the court.

## COUNT II

### Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 525D.43 *et seq.*

55. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as though fully set forth here.

56. Defendant, through its employees and agents, engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendant engaged in deceptive, unconscionable, and/or unfair business practices by, among other things: selling coins, overpricing them, obfuscating and

concealing their true value, and convincing an unwitting public that coins are valuable and worth what they are charging for them.

57.     The amounts Defendant charged, collected, and deducted from bank accounts (or otherwise billed and collected) are material terms to Defendant's customers, including Plaintiff and the Class.

58.     Defendants engaged in conduct likely to cause confusion and misunderstanding as to the value of goods sold, and the reasons for discounts from the actual or prospective value in violation of Minn. Stat. § 325D.44, subd. 1(11) and (13).

59.     Price is a material term to consumers. Deceptively overcharging consumers in a manner they are unlikely to detect within a short time period is a material misrepresentation or an omission of material fact to reasonable consumers in the Class.

60.     The misconduct described in this Complaint occurred in a regular and continuous manner and Class members were injured because Defendant maintained incentive programs for its employees and agents that provided financial incentives to engage in such conduct.

61.     It is very difficult to obtain an independent public assessment of a bullion coin's value. Therefore, Defendant knows that certain customers may not know that the value of the coins are not worth what Defendant is charging for them, immediately notice such discrepancies, and immediately seek corrections when appropriate. Defendant seeks to exploit and take advantage of that dynamic.

62.     As a result of Defendant's deceptive conduct, Plaintiff and the Class are entitled to injunctive relief, costs and attorney's fees under Minn. Stat. § 525D.45.

## COUNT III

**Violation of the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act ("SCDPA"), §§ 325F.71 *et. seq.* (Brought by the Elder Subclass Against Defendant)**

63. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as though fully set forth here.

64. Count III is brought on behalf of members of the Elder Subclass.

65. Under Minn. Stat. § 325F.71, subd. 2(a), "In addition to any liability for a civil penalty" under Counts I and II, "a person who engages in any conduct prohibited by those statutes, and whose conduct is perpetrated against one or more senior citizens or disabled persons, is liable for an additional civil penalty not to exceed $10,000 for each violation, if one or more of the factors in paragraph (b) are present."

66. Included in paragraph (b) is whether the Defendant knew that its conduct was directed at senior citizens, which Defendant did know.

67. Under Minn. Stat. § 325F.71, subd. 4, Plaintiff and other members of the Elder Subclass are entitled to recover damages, equitable relief as determined by the court, costs and disbursements, including costs of investigation, and reasonable attorneys' fees.

## COUNT IV

### Unjust Enrichment

68. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as though fully set forth here.

69. By taking advantage of Plaintiff and the Class's unequal information and bargaining power, selling multiple coins to the same people, obfuscating the true nature of

the coins' value and the secondary market for such coins, targeting vulnerable purchasers, Defendant has retained the moneys charged for such coins at rates that would not prevail in an arm's length and just marketplace.

70. It would be unequitable and just for Defendant to retain the profits, benefits, interest, and other compensation obtained through its wrongful conduct which is in express violation of Minnesota law.

71. As a result of this unjust enrichment, Plaintiff and the Class seek restitution in an amount sufficient to compensate them for their losses. These losses include the amount Defendant was unjustly enriched by the excess amount(s) charged to Plaintiff and the Class.

72. Plaintiff and the Class further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## COUNT V

### Injunctive Relief

73. Plaintiff incorporates and realleges each and every allegation in the preceding paragraphs as though fully set forth here.

74. Defendant, through its employees and agents, engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendant engaged in deceptive, unconscionable, and/or unfair business practices by, among other things: selling coins, overpricing them, obfuscating and

concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

75. Defendant's conduct as described above constitutes an unfair and deceptive trade practice under Minn. Stat. § 325D.44, Subd. 1, and it is unlawful under Minn. Stat. §§ 325F.67, and 325F.69.

76. Defendant continues to engage in cramming and/or maintains internal incentive programs aimed at increasing its revenues by charging its customers with overpriced coins selling coins and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

77. Plaintiff and members of the Class are thus entitled to equitable and injunctive relief, and to recover their costs, and reasonable attorney's fees pursuant to Minn. Stat. §§ 8.31, subd.3a and 325D.45.

## VI.   JURY TRIAL REQUESTED

78. Plaintiff, on behalf of himself and the Class members, demand a jury trial in this action for all of the claims so triable.

## VII.   PRAYER FOR RELIEF

79. Plaintiff, on behalf of himself and the Class members, prays for the following relief:

  a. An order appointing Plaintiff as Interim Class Representative and appointing undersigned counsel as Interim Class Counsel;

  b. Certify the proposed Class and Elder Subclass and appoint Plaintiff and his legal counsel to represent the Class and Elder Subclass;

c. Find in favor of Plaintiff, the Class, and the Elder Subclass on all counts;

d. Award damages, including compensatory, exemplary, and statutory damages to Plaintiff, the Class, and the Elder Subclass in an amount to be determined at trial;

e. Grant restitution to Plaintiff, the Class, and the Subclass and require Defendant to disgorge its ill-gotten gains;

f. Award Plaintiff, the Class, and the Subclass their reasonable attorney's fees and the costs and disbursements of this suit incurred here;

g. Enjoin Defendant from future misrepresentations regarding the sale of bullion and commemorative coins;

h. Award Plaintiff, the Class, and the Subclass pre-judgment and post-judgment interest at the highest legal rate provided by law; and

i. Order any such other and further relief that the Court deems just and equitable.

Dated: March 1, 2024               Respectfully submitted,

**CHESTNUT CAMBRONNE PA**

By: /s/ *Bryan L. Bleichner*
Bryan L. Bleichner (#3026689)
Jeffrey D. Bores (#227699)
Christopher P. Renz (#0313415)
100 Washington Avenue South
Suite 1700
Minneapolis, MN 55401
Phone: 612-339-7300
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com

**STECKLER WAYNE & LOVE, PLLC**
Bruce W. Steckler
Texas Bar No. 00785039
Austin P. Smith
Texas Bar No. 24102506
Kaitlyn M. Coker
Texas Bar No. 24115264
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@swclaw.com
austin@swclaw.com
kcoker@swclaw.com